**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Joseph STASSI, Sr., Defendant-Appellant.**

**No. 28658**

**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Aug. 18, 1970.

---

Clyde W. Woody, Marian S. Rosen, John P. Farra, Houston, Tex., for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GEWIN, Circuit Judge:

Joseph Stassi, Sr. was convicted of conspiracy to smuggle heroin into the United States and to conceal and facilitate the transportation of heroin after unlawful importation, in violation of 21

U.S.C. § 174.[1] On appeal, this court remanded the case to the district court for the limited purpose of determining whether electronically collected evidence, disclosed to this court by the government, tainted Stassi's conviction.[2] Following an evidentiary hearing, the district court concluded that Stassi's conviction was valid and entered a new judgment of conviction.[3] The present appeal is taken from that judgment. We affirm.

■ The electronic surveillance in question was conducted by the Federal Bureau of Investigation under the authorization of the Justice Department. While Stassi was not the subject of the surveillance and his premises were not "bugged", the F.B.I. overheard several conversations in which Stassi was a participant or was in some way mentioned.[4] Stassi initially contends that the court erred in failing either to order the government to produce all of its records relevant to the electronic surveillances in

question or, to dismiss the case against him. This allegation has particular reference to the original tape recordings of conversations. It should be noted that prior to the hearing, the government furnished Stassi with pertinent extracts from the surveillance logs; agents' reports; and inter-office communications. We feel that the court's refusal to allow further discovery was a legitimate exercise of its discretion. Stassi had no right to rummage through the government's files.[5]

■■ With reference to the original tapes, Stassi is in effect arguing that his conviction must be reversed, since they are no longer in existence.[6] We do not agree. While the surveillances in question violated the Fourth Amendment, it is clear that they in no way tainted Stassi's conviction. The district court found that on two occasions the F.B.I. overheard innocuous conversations involving Stassi when he visited "bugged" premises.[7] On a third occa-

1. Pursuant to our Rule 18 this case is decided without oral argument.

2. Stassi v. United States, 410 F.2d 946 (5th Cir. 1969). *See* Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); Kolod v. United States, 390 U.S. 136, 88 S.Ct. 752, 19 L.Ed.2d 962 (1968).

3. *See* Alderman v. United States, 394 U.S. 165, 186–187, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

4. While Stassi was under investigation by the F.B.I., they had not employed electronic devices in this investigation. The surveillances in question involved a totally separate investigation concerning gambling operations in New Jersey. One of the surveillances was directed at one Eugene Catena, and the other at one Angelo DeCarlo.

5. Taglianetti v. United States, 394 U.S. 316, 89 S.Ct. 1099, 22 L.Ed.2d 302 (1969).

6. In its memorandum opinion, the district court noted that the surveillance was conducted as follows:

A monitor clerk, in the employ of the FBI, received the incoming conversations from the surreptitious microphones. He undertook by use of a typewriter, to make notes of what appeared to be of substance in the course of the con-

versations. A tape recorder likewise made a verbatim record of what was heard. Within a matter of approximately 48 hours the FBI agent concerned would replay the tapes and would examine the "log" made by the monitoring clerk. He would extract what information he thought of value and would include it in periodic "reports" which he forwarded to his superiors. Such reports included not only the results of the electronic surveillances but of a great deal of other information secured by legitimate and usual investigative procedures. In some instances the information involved, whether the result of electronic surveillance or otherwise, would be forwarded to FBI offices in other cities by mail or teletype. With reference to the electronic surveillance which is of concern here, and extracting the information resulting from "street investigation" it is apparent that the logs and the tapes were the source of all of the information which was tainted. The tapes uniformly were erased for future use immediately after the agent had replayed them and prepared his report.

7. The first conversation concerned the recent death of Stassi's brother-in-law, and the second concerned one Parness who owed Stassi money.

sion an individual identified only as "Joe"—which may or may not have been Stassi—entered one of the areas under surveillance but left almost immediately. On a fourth occasion, Stassi's name was overheard during a conversation in his absence.[8] Most importantly, the district court noted that the surveillance in question was conducted by the F.B.I. while the investigation which led to Stassi's conviction was conducted entirely by United States customs officers. It found that the customs agents had employed no electronic surveillance of Stassi and that there had been no disclosure of the F.B.I. surveillance to the customs agents. The findings of the district court are amply supported by the record.[9]

Finally, Stassi contends that the decision of the present appeal should be held in abeyance pending the Supreme Court's decision of Turner v. United States,[10] which involved the presumption embodied in 21 U.S.C. § 174, which authorizes conviction on an unexplained showing of possession. Since this argument was advanced, the Court has decided *Turner*, and upheld the presumption as it applies to heroin. Moreover, Stassi

was convicted of conspiracy to violate 21 U.S.C. § 174 principally on the testimony of a co-conspirator, and his conviction was not affected by the presumption of which he complains.

The judgment is affirmed.

---

8. While it was unnecessary for the district court to decide the question, it appears that Stassi only had standing to complain of the first two instances, conversations to which he was a party. Alderman v. United States, 394 U.S. 165, 176, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

9. In a very thorough memorandum opinion the district court found, along with other pertinent facts, the following:

It appears that the defendant was never the direct subject of electronic surveillance, or wiretapping, etc.; that his connection therewith was minimal and accidental; and that the information so secured was entirely unrelated to these charges and contributed not in the slightest degree to the investigation and presentation of the present case.

\*        \*        \*        \*        \*

The investigation which led to the charge and conviction in this Court was

handled entirely by the U. S. Customs Agency Service. This Agency had no wire taps or electronic surveillance in operation and certainly none directed at this defendant. The Customs Agent in charge of the investigation (Fallon) spoke to the FBI (Agent McAndrews of the New York office) with reference to this defendant only on one occasion which was after the charges here, while a warrant was outstanding, and while the defendant was a fugitive. None of the electronically secured information was disclosed or discussed.

\*        \*        \*        \*        \*

The defendant has been furnished everything the government has with reference to the electronic surveillance which pertains to him.

10. 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970).